EDWARD GREEN, TRUSTEE,  
          VS.  } JULY TERM, 1848.  
TRUE PUTNEY AND HUGH RIDDLE.

[TRUSTEES, THEIR POWERS AND ALLOWANCES TO THEM.]

WHEN a trustee, appointed by this court to sell property and bring the proceeds
in to be disposed of under its orders, disburses money without competent authority, he will be chargeable, as if the money was in hand.

This principle cannot be applied with the same rigor to a trustee acting under
a deed, giving express authority to pay debts.

Nor, does the fact, that such a trustee applies to a court of equity for its direction and assistance in the execution of his trust, place him in the predicament
of a trustee of the court's appointment, with powers limited and defined by
the decree.

If such trustee thinks proper himself to disburse the fund, he cannot be called
upon to bring it into court, unless the disposition which he has made of it
is shown to be improper.

Where the trustee, by the terms of the deed creating the trust, was entitled to
an allowance for costs and expenses attending its execution, such allowances,
should the nature of the trust and the circumstances of the case require it,
will embrace, even without an express provision, the expense of employing
an attorney.

---

[Edward Green, the trustee, under a deed from True Putney
and Hugh Riddle, dated 29th of August, 1839, conveying to
him a large amount of property, real and personal ; also, transferring to him all debts and claims due them as partners, and
evidences of debt of every description in trust for the benefit of

creditors, filed his petition in November, 1841, on the equity side of Baltimore County Court, stating his receipt of a portion of the trust fund, and praying leave to distribute the samé under the authority of the court. On the 30th of November, 1842, about two-thirds in amount of the creditors of Putney and Riddle assigned to the latter all the interest of the assignors in a claim which the assignees had against the United States for losses sustained by them, in the performance of a contract with the government, for building a warehouse in the city of Baltimore; this claim was to be prosecuted by the assignees for their own use; and a reservation was made by the assignors of their interests and dividends in the property, and the rest of the claims conveyed to Green. The amount recovered from the government under the claim for losses, was $9,672 61, which, after the deduction of expenses and commissions was distributed among the creditors of Putney and Riddle, they themselves receiving under the above mentioned assignment, the sum of $5,621 33. The money recovered from the government had been received by Green, as trustee, and distributed under the directions of the Baltimore County Court, by the Auditor of that court, in an account accompanying his report of the 16th of January, 1845. The trustee received the further sum of $13,985 38, as due Putney and Riddle for work done for the government. This sum was paid to Green, as trustee, under the deed described above; and also, as permanent trustee of Putney, who had taken the benefit of the insolvent laws, in 1840. During the prosecution of this claim, on the 31st of December, 1842, Putney and a certain Peter Gorman entered into an agreement, by which Gorman, in consideration of his furnishing the necessary funds for its prosecution, was to receive one-half of Putney's share, should any thing be recovered. On the 27th of September, 1844, Putney, Riddle and Gorman, who were engaged in buying up claims against the firm of Putney and Riddle, entered into a written agreement by which it was stipulated, that in the purchases of that description already made, and in those thereafter to be made, the parties should contribute rateably, that is, Riddle should con-

tribute one-half, and the others each one-fourth; the proceeds of the claims and dividends so purchased, to be divided in the same proportion. On the exhibition of the agreement between Putney and Gorman, one-fourth of the sum awarded to Putney and Riddle by the Auditor's report of the 16th of January, 1845, was, by order of the court, directed to be paid to Gorman. Under the agreement of September, 1844, Gorman and Riddle purchased and took assignments from numerous creditors of Putney and Riddle, including those already assigned to the two latter. Counsel were employed by Gorman and Riddle to prosecute the claim against the government for work done and materials provided in the erection of the warehouse in Baltimore, who were to receive one-half of Gorman and Riddle's share of the money recovered, and Green agreed to allow them the same proportion of what he would be entitled to as trustee. By a subsequent agreement between Gorman and Riddle and two of their counsel, it was stipulated, that the sums expended by the two former in purchasing claims should be first deducted from the amount recovered, and the counsel should receive one-half of the residue. The amount received by Green from the government, on account of this claim, was $13,985 38, and the counsel and Gorman and Riddle, desiring to have a settlement, had a meeting for that purpose, on the 2d of September, 1846, and three papers were executed by them, by the first of which they waived any right which they might have to the sum of $2000, retained by Green for distribution, under the direction of the court; amongst the parties entitled by the second, Gorman and Riddle were allowed $2500 for moneys expended in buying up claims against Putney and Riddle, and Green was allowed $600 for commissions on the money then in his hands, and the further sum of $200 for defraying future costs and charges. Of the residue of said sum, after making these deductions, one-half was to be paid to the counsel by Green, for which he was to be allowed credit. The object of the third paper was to indemnify Green, who had, on that day, advanced the sum of $5,842 69 to Gorman and Riddle, in case he should not, as trustee, be allowed for it. By an agreement

between Green and Gorman and Riddle, made on the 31st of January, 1845, Green waived his right to the commissions on any sum obtained by the two latter from the United States on their own receipt, but was to receive $100 in case he had to pass his receipt therefor. By a subsequent agreement between them, he, Green, was to take an active part in obtaining the money, and was to be properly compensated therefor.

This case was, by order, dated the 17th of November, 1846, removed to this court, and the questions presented to the Chancellor arose on exceptions to the reports of the Auditor of the Baltimore County Court.]

THE CHANCELLOR:

It is said that Green, the trustee, must not only bring into court the sum of $2,800, mentioned in the order, 12th of February, 1847, which was passed by consent; but he must also bring in the amount which he paid the counsel on the 2d of September, 1846, and the court is called upon by Putney and Gorman and Riddle to compel him to do so.

The argument of the counsel for Putney is, that a trustee who disburses money without competent authority, is chargeable, as if the money was in hand.

However true this may be with regard to a trustee appointed by this court to sell property, and bring the proceeds in to be disposed of under its orders, the principle cannot surely be applied with the same rigor to a trustee acting under a deed giving express authority to pay debts, and the circumstance, that the trustee in this case applied to the court for its direction and assistance in the execution of his trust, does not place him in the predicament of a trustee of the court's appointment, with powers limited and defined by the decree. If the trustee, notwithstanding his application to the court for directions, thinks proper himself to disburse the fund, he cannot be called upon to bring it into court, unless the disposition which he has made of it, is shown to be an improper one.

Now, so far as Gorman and Riddle are concerned, and to the extent of their interest in the fund, it would seem impossible,

that the application with regard to this payment can be success-- ful.    Their agreement on the 24th of August, 1844, and the papers signed by them, on the 2d of September, 1846, when they themselves received $5,842 69, of this same money, seems to me effectually to conclude them from objecting to the pay- ment of the counsel.

But, it is said, that this payment to the counsel cannot prej- udice the rights of Putney, because the agreement of the 24th of August, 1844, under which it was paid, was not signed by him.

It is to be recollected, however, that upon the record as it stood on the 2d of September, 1846, the date of the payment, Gorman and Riddle, who did make the agreement with the counsel, were the assignees of the claims of creditors to the amount of $12,767 48, and, therefore, Green may have been excusable in treating them as entitled to make any contract they saw fit in regard to the fund.

I do not concur with the counsel for Putney in the position, that under the assignment of November, 1842, to Putney and Riddle the creditors transferred to them any and every sum which might, or should be recovered from the United States. On the contrary the assignment is expressly *restricted to any* claim they might have upon the government, for *losses sustain- ed by them* in the performance of their contract with the gov- ernment; every other claim of the creditors founded upon the deed to Green being reserved.

It does not distinctly appear upon what ground the sum now in question was paid—whether it was paid as a further indem- nity for losses, and if so, covered by the assignment of 1842, or whether it was paid under the contract with the government, by Putney and Green, and if so, not covered by the said assign- ment, according to my understanding of it.    The fifth report of the trustee leaves this question in some doubt.

But, be this as it may, it is very certain the parties did not treat the assignment of 1842 as absolute, and as transferring the entire interest of the creditors to any sum which might be re- covered from the government.

There is another view of this subject which has a strong tendency, in my judgment, to justify Green, the trustee, in paying these fees to the counsel. He was, by the terms of the deed of August, 1839, creating the trust, entitled to an allowance for costs and expenses attending its execution, inclusive of a reasonable commission to himself; and such allowances, should the nature of the trust and the circumstances of the case require it, will embrace, even without an express provision, the expense of employing an attorney. *Willis on Trustees*, 146, 147; 10 *Law Lib.*, 69; *Hagthrop* vs. *Hook*, 1 *Gill & Johns.*, 273; 2 *Mod. Ch. Prac.*, 158.

In this case, it is manifest, that notwithstanding the assignments of the creditors to Putney and Riddle and Gorman, that the agency and active exertions of the trustee were indispensable to the recovery of the money from the United States, he being considered by the government, the party alone authorized to receive it.

Now assuming, for the sake of the argument, that Putney, was entitled to one-fourth of this fund, (and that is certainly the extent of his claim,) was not Green, as his trustee, authorized to unite with Riddle and Gorman, the owners of the other three-fourths, in the contract which they made with the council upon the subject of fees? Was not this agreement on the part of the owners of three-fourths of the claims, the strongest possible evidence of the reasonableness of the compensation.

The court is without the necessary data to found a very satisfactory opinion upon the subject; but, seeing that parties interested to the extent of three-fourths made this contract, and forming the best judgment I can, from the lights before me of the difficulties which had to be surmounted, before the claim could be allowed, I am not disposed to visit upon the trustee . loss on account of it.

I am of opinion, therefore, that Green is entitled to be allowed for this payment to the counsel, not only as against Gorman and Riddle, but, as against Putney, also.

The next question relates to the trustee's claim, to be allowed for the sums of $600, and $200, provided for in the paper

marked B, and signed on the 2d September, 1846, by the counsel, and Gorman and Riddle. The counsel for Putney insists, that the trustee's demand for commissions must be limited to the sum of $100, as provided in the contract of the 31st January, 1845, and signed by the counsel, and Gorman and Riddle. It is true, that by that contract, the trustee did agree to receive only the sum of $100, in the event of his being required by the government, to give his receipt for any moneys which might be recovered ; but, it is equally true, that by the subsequent contract of the 2d January, 1846, signed by two of the counsel, and Gorman and Green, the trustee, it was stipulated, that the latter should receive a proper compensation out of these moneys. By the agreement of 1845, which limits the trustee's allowance for commissions to the $100, it is evident, that he was to be merely passive ; passing his receipt for the money, if required to do so by the government, but making no exertion to recover it ; whilst by that of 1846, he engaged to exert himself to secure the payment of the claim by the government, and to prevent any difficulties which the creditors might interpose, and hence the modification of the agreement, with regard to commissions.

So far as Gorman and Riddle are concerned, they being parties to the paper marked B, the allowance to the trustee of these sums is not to be questioned. And, if Putney seeks to avail himself of the agreement of January, 1845, to cut the trustee down to $100, he must also submit to be bound by that of January, 1846, which stipulated, that the trustee should receive a proper compensation for the services therein agreed to be performed.

Putney was no party to either of these contracts, and he cannot be permitted to have the benefit of the one, without being bound by the other. He must take both, or neither. And if he repudiates both, the parties are thrown back upon the deed of trust, of 1839, under which the trustee is in terms entitled to a reasonable commission, and his expenses. I think, therefore, that Green, the trustee, is to be allowed for these two sums.

We have seen, that by the agreement of the 2d September, 1846, marked B, between the counsel, and Gorman and Riddle, the latter were to be allowed the sum of $2500, for expenses incurred by them in purchasing claims against Putney and Riddle, and that, by the previous agreement of the 27th September, 1844, between Putney, and Gorman and Riddle, those three parties were to contribute towards such purchases rateably, and, that any money which might be recovered from the government, was to be distributed in like manner. The proportion of contribution, and distribution, being one-half to Riddle, one-fourth to Putney, and one-fourth to Gorman.

It appears by the trustee's sixth report to Baltimore County Court, that of the money received from the government, the trustee advanced to Riddle and Gorman, as assignees of the creditors of Putney and Riddle, the sum of $4592 69, but the paper signed by them, marked C, shows that the whole amount advanced them was $5842 69, the difference being $1250, or one-half of the sum stated to have been expended in purchasing up the claims of creditors. I am at a loss to understand how this allowance can be disputed by Putney.

The state of the account, then, would seem to be as follows:

| | | |
|---|---|---|
| The amount received by Green was | . . | $13,985 38 |
| Paid counsel, . . . . | $5,342 67 | |
| Paid Gorman and Riddle . . | 5,842 69 | |
| | | 11,185 36 |

Leaving in his hands the sum of . . . $2,800 02 being within a fraction the amount which, by the order of 12th February, 1847, passed by consent of parties, he was directed to bring into court. That order has been partially complied with, by the payment into court on the 6th of January, last, the sum of $1807 85, but my opinion is, that it must be complied with in full, and the residue of the money brought in.

The counsel for Putney is not content with this, but says, that the trustee must also bring in the money paid to the counsel, and that he the trustee, and Gorman and Riddle, must likewise bring in the money in the hands of the two last.

23*

Some stress is laid upon the fact, that the order of the 12th February, 1847, was passed by *consent* of parties ; but if this be so, it would be as irregular to enlarge it, as to diminish it. If because it was passed by consent, Green must at all events comply with it, it would seem to follow, that the other parties are equally concluded, and that they have now no right to call upon him to pay in a larger amount.

I do not, however, put my opinion entirely upon the ground of its having been passed by consent, though that circumstance may be entitled to some consideration.   It stands as an unrescinded order of the court, and must be obeyed.

The court does not see at this time any sufficient reason for rescinding it, and its having been passed ·with the assent of the parties, certainly would prevent me from interfering with it upon any but very strong grounds.

The rights of the parties to the money, can be adjusted as well after it is paid in, as at this time.

With regard to the sum of $4592 69, advanced by Green, to Gorman and Riddle, on the 2d September, 1846, it may not be easy at this time to determine, whether that is the precise proportion of the fund, to which they are entitled.   It cannot be disputed, I presume, that they were entitled to three-fourths of the net amount of the money received from the government, applicable to the claims assigned to them and Putney, and perhaps, therefore, in any view of the case, justice may be done to Putney, out of the fund now under the control of the court, without recalling any portion of that which has been paid to Gorman & Riddle.

It is insisted, that Putney's share, whatever it may be, must go to Green, as his trustee in insolvency, and it is also insisted that he contributed no part of the money with which the claims of the creditors were brought up.

These questions will be for the present left open, to be decided when the Auditor shall have made his report, but the money so paid, I think, should not, under the circumstances, be ordered to be brought in.   If these parties, Gorman and Riddle, have received more than their proportion, they at the proper time will

be ordered to refund it, and Green in any event cannot be held liable until their inability is ascertained. It is not, however, to be understood, that, in the opinion of the court, Green would be liable in the latter event, that question being reserved. The court will pass an order, referring the case to the Auditor, with such directions, as can at this time be given; and reserving such questions, as cannot now be safely decided.

[No appeal was taken from this order.]